ANTONIO E. GRILLO, Appellant, v. REGISTRAR OF PROPERTY OF CAGUAS, Respondent.

No. 1130. Submitted November 1, 1943.—Decided December 7, 1943.

*Andrés Mena Latorre* for appellant. The registrar appeared by brief.

MR. JUSTICE TODD, JR., delivered the opinion of the court.

Martina García Reyes, who owned a rural property located in Caguas, sold it to Antonio E. Grillo, appellant herein, on July 30, 1927, for $4,000 which the purchaser retained as a loan to bear interest at $22 monthly, promising to pay said $22 to the vendor during her lifetime and then, after the death of Martina García Reyes, to continue the payment of said interest to Carmen García Reyes, sister of the vendor, during her lifetime also. As security for the $4,000 and interest thereon Grillo executed a first mortgage upon the property sold. By a will executed on March 6, 1929, Martina García Reyes designated her sister Carmen as her sole and universal heir, and appointed Antonio E. Grillo, appellant herein, as testamentary executor and commissioner in partition. Martina Reyes died on February 10, 1932, and on March 15, 1932, Carmen García Reyes, her heir, by deed No. 86 entitled "Contract of Life Annuity," executed before Notary Andrés Mena Latorre, assigned to appellant Grillo and his wife the mortgage credit which she had inherited.

As a consideration for such conveyance Grillo and his wife bound themselves to pay to the assignor during her lifetime a life annuity amounting also to $22 monthly. In order to secure payment of this sum they executed a voluntary mortgage on the estate in favor of the assignor, which mortgage was to be cancelled on the death of the annuitant on the mere request of the mortgagees, their successors or assigns, in writing, and "without the necessity of evidencing the payment of all the accrued annuities during the latter's life, for if there should be any unpaid annuities the annuitant hereby renounced them and made a gift of the amount thereof to the mortgagees and their successors and assigns, the mortgagees accepting such a liberality for which they were really grateful."

After the original mortgage credit had been recorded in favor of Carmen García Reyes, there was presented for record to the Registrar of Property of Caguas the said deed No. 86 executed on March 15, 1932, which the registrar refused to accept, and he rendered the following decision:

"The record of the foregoing instrument is denied because it appears from the cautionary notice letter E entered regarding the above estate on the back of folio 147 of volume 122 of Caguas that according to deed No. 149, executed in Caguas on April 8 of the current year 1943, before Notary Andrés Mena la Torre, said Carmen García Reyes, who claimed to be the owner by inheritance of a mortgage credit upon this estate amounting to $4,000 cancelled the same upon receipt from the debtor Antonio E. Grillo Santiago of the aforesaid sum as follows: $3,868 in monthly instalments of $22 each starting from March 15, 1932, and the balances of $832 at the time said cautionary notice was entered because of the failure to previously record the said credit in favor of the creditor; that by deed No. 86 dated March 15, 1932, executed before the same notary Mena—which is the instrument here presented—Antonio Grillo Santiago, claiming also to be the owner of the same mortgage credit of $4,000 by reason of the conveyance thereof made to him by the said Carmen García Reyes in exchange of a life annuity for $22 monthly, cancelled the said mortgage credit as a merger of titles as creditor and owner; and as it appears that said incongruity between the two instruments

has given rise to certain doubts as to the validity and legality of the acts therein set forth which may involve a matter of fraud whose determination devolves upon the courts. A cautionary notice is entered in lieu thereof for 120 days in favor of Antonio E. Grillo as to the conveyance in favor of Carmen García Reyes regarding the mortgage on the back of folio 249 of volume 122 of Caguas, estate No. 352, entry letter F. Caguas, September 13, 1943."

■ Deed No. 149, executed on April 8, 1943, referred to by the registrar in his decision, has been accompanied by the initial petition filed by the appellant in this case.

The situation arising from the deeds executed in 1932 and 1943 is really conflicting. According to the cautionary notice ⓕ which has reference to deed No. 149 of 1943, Carmen García Reyes cancelled the $4,000 mortgage credit as having been paid, while it appears from deed No. 86 of 1932 that appellant Grillo had already cancelled the same and this is why the registrar records the fact of his having "serious doubts as to the validity and legality of the acts" set down in the two deeds "which may involve . . . fraud whose determination devolves upon the courts." We think, however, that the appellant is right in maintaining that the only deed before the registrar for consideration is deed No. 86 of 1932, since as regards deed No. 149 of 1943, its record was denied and this denial became final because the cautionary notice for 120 days had more than expired before the deed of 1932 was presented in the registry.

The ground relied upon by the registrar for refusing the admission to record of deed No. 86 of 1932, is §79 of the Mortgage Law Regulations which reads as follows:

"Article 79.—Registrars shall not only refuse to admit to record any instrument containing errors preventing such record, making a cautionary notice thereof or not, as may be proper, but when it shall appear from such instrument that a criminal offense has been committed, they shall also advise the proper judicial authority, forwarding the document in question thereto."

The registrar maintains in his brief that he does not think that under §79, *supra,* he ought to have forwarded the instrument to the proper judicial authority, because if "his decision refusing to record the deed is sufficient to prevent in the registry the furtherance of any act infringing the law, it is better to leave to the courts the exercise of their jurisdiction in the furtherance of justice."

A mere reading of §79, *supra,* shows that the same is not applicable to the facts of this case and, should it be so applicable, the registrar failed to comply with its provisions. It does not appear from the contents of the instrument presented in the registry that any offense has been committed, but if such were the case the conduct of the registrar should have been otherwise, that is, he should have refused to record the same and forwarded it to the proper judicial authority —the district attorney—leaving a record of the proceedings in a note on the margin of the entry of presentation. This is the procedure suggested by the commentators.

On page 231 of volume 2 of his work, Morell says:

"Now, if the commission of an offense should appear from the instrument itself, the registrar shall so advise the proper judicial authority by forwarding to it the instrument in question and record such fact of the forwarding and the reason therefor by means of a note on the margin of the entry of presentation. This provision, contained in art. 79 of the Regulations, will be very rarely enforced, as it is not natural, as stated by Escosura, that those who have in mind the commission of an offense should proceed in such a way as to so make it appear from the instrument itself."

To the same effect it is stated in the work of Galindo and Escosura, vol. 2, p. 17, that—

"The provisions of art. 58 of the Regulations may have to be very rarely enforced. Those who have in mind the commission of an offense will see to it that their guilt does not appear from the instrument itself; and as it is expressly provided in art. 18 of the Law that the decision must be based upon the contents of the instru-

ments, in like manner art. 58 of the Regulations confines the duty, imposed thereby upon the registrar of advising the proper judicial authority and forwarding the instrument, to a case where the commission of some offense appeared from the instrument itself.''

██ If the above were the only question involved in the case we would be compelled to reverse the decision appealed from; but the registrar in his brief enters into other considerations, not set forth in his decision refusing the record, in support of his action, partly alleging that the conveyance of the mortgage credit made by Carmen García Reyes to the appellant is a void contract for lack of consideration (§1213 of the Civil Code) inasmuch as the debtor failed to pay anything for the conveyance, and moreover, as Martina García Reyes had appointed the appellant in her will as her testamentary executor and commissioner in partition, who in turn owed the mortgage credit inherited by Carmen García Reyes, the acquisition by appellant by conveyance from the heir of the said credit, which constituted the inheritance from the predecessor in interest, was in violation of §1348 of the Civil Code.

It has been held by us that it is not in the brief that the registrar should assign the legal grounds for his decision; it is his duty to set out such grounds, clearly and concisely, at the foot of the instrument. *Machuca, Sons & Co.* v. *Registrar,* 22 P.R.R. 701; *Graciani* v. *Registrar,* 25 P.R.R. 41; *United Firemen's Ins. Co.* v. *Registrar,* 45 P.R.R. 576; and *Valentín* v. *Registrar,* 61 P.R.R. 212. In some of the above cases this court considered from every angle the question raised and affirmed the decisions appealed from, because of the existence of special circumstances involved in the matter which justified it. We think that in the present case we are likewise justified in doing the same, inasmuch as the appellant moved for leave to file and did file a reply brief to that of the registrar in which the questions submitted were discussed.

██ It appears from the facts as recorded in the regis-

try that Carmen García Reyes owned a mortgage credit for $4,000 which she inherited from her sister Martina, which mortgage bore interest amounting to $22 monthly during her lifetime, the mortgage maturing on the death of Carmen. However, according to the deed, the subject matter of this appeal, Carmen García Reyes granted to her mortgagor, who at·the same time is the testamentary executor of the only estate left by the predecessor in interest, the credit owned by her and agreed to her debtor paying her $22 monthly as a life annuity, that is, the same amount that he was bound to pay her as interest, and the mortgage was cancelled by merger of the rights of the appellant who executes a new mortgage upon the estate to secure only the life annuity of $22 monthly. It was a condition of this latter mortgage that it should be cancelled at the death of Carmen García Reyes and the appellant was released in advance from the payment of any annuity left unpaid to the annuitant.

So that, what the appellant did was to promise to pay $22 monthly to Carmen García Reyes as life annuity, whereas, formerly, he was bound to pay this same amount of $22, likewise during life, but as interest on the $4,000 mortgage. Under the new contract, however,—and this is the real issue in this case—the appellant is not bound to pay the $4,000 principal of the mortgage upon the death of Carmen García Reyes.

Section 1702 of the Civil Code provides that "an aleatory contract of annuity binds the debtor to pay a pension or annual income to one or more. specified persons for life, for a principal in personal or real property, the ownership of which is at once transferred to said debtor charged with the income." In the case at bar the principal whose ownership is conveyed to the appellant is not the estate, as he has been owning it ever since 1927 when he purchased it from the ancestor of Carmen García Reyes. The principal conveyed is constituted by the $4,000 mortgage credit and the debtor

assumed the responsibility of continuing the payment of the same $22 as life annuity. Conceding, without holding, that the consideration of the contract was the mere liberality of the creditor, as alleged by the appellant, could the latter, as testamentary executor, acquire said credit? It is true that he does not appear in the deed as such testamentary executor, but in the fifth record of the estate where the mortgage credit was registered in favor of Carmen as the heir of her sister Martina it was stated that the appellant had been appointed testamentary executor of the latter.

Section 1348 of the Civil Code partly provides that: "The following persons can not acquire by purchase, even at public or judicial auction, neither in person, nor by an agent: . . . 3. Executors, the property intrusted to their care."

In the case at bar it appears from the registry not only that the appellant was the testamentary executor of the estate left by Martina García Reyes, but that the only property left by the testatrix was the mortgage credit owed by the appellant himself and therefore he was in possession thereof. It might be argued that this is not a sale contract properly speaking, but Manresa holds that the contract of life annuity, provided the capital delivered is not a cash amount, "partakes more of a sale or an annuity contract." 13 Manresa, Civil Code, p. 56. In the case at bar Carmen García Reyes did not deliver to the appellant any amount in cash but conveyed to him the mortgage in which she was the mortgagee, and a mortgage is a real right on real property and is considered as an immovable,—subdivision 10 of §263 of the Civil Code,—and as stated by us in *García et al.* v. *Garzot,* 18 P.R.R. 835: "To cancel a mortgage is to declare it extinguished, to dispose of it and, consequently, to alienate it."

In his work *"Legislación Hipotecaria,"* when commenting on §65 of the Mortgage Law, in connection with

the grounds that may give rise to a refusal by the registrar to record an instrument, Morell includes, among those based on the relative or absolute lack of capacity in the purchaser, the cases enumerated in §1348 of the Civil Code, *supra*.

The appellant, however, argues that as the heir was of age she was not incapacitated to sell or convey the mortgage credit to the testamentary executor, "since a testamentary executor is nothing else than a special agent to preserve and distribute among the heirs the hereditary estate" and, therefore, the doctrine established in *Silva Bros.* v. *Registrar of San Juan,* 28 P.R.R. 164, is applicable, to the effect that: "Although an agent can not acquire the property of his principal, this prohibition is to be construed strictly and if the principal himself sells the property to the agent the agency is understood to be revoked and the prohibition does not apply."

In our judgment, the appellant is wrong. A testamentary executor, even though considered as a special agent, is such agent of the testator but not of the heirs, 8 Manresa, Civil Code, p. 686 *et seq.*, especially at page 693, where Manresa, after citing judgments of the Supreme Court of Spain, says that said court has upheld that "testamentary executors are actual agents of the testator but not of the heirs . . ." The testatrix in the present case knew, when appointing the appellant as her testamentary executor, that he owed the only property which she had bequeathed to her sister. One month and eight days after the death of the testatrix the testamentary executor acquired for himself said credit in consideration of the payment to the heir of a life annuity of $22 monthly which he was already bound to pay her as interest on the obligation. What agency from the testatrix was the appellant performing? None. On the contrary, we hold that the contract infringes §1348 of the Civil Code, *supra,* and that the registrar did not err in refusing to record the same.

The decision appealed from must be affirmed.